| | |
|---|---|
| In re: | Case No. 01-19372 |
| MORRIS I. DORFSMAN, Debtor. | Chapter 7 |
| ALAN TREINISH, Plaintiff, | Adversary Proceeding No. 05-1366 |
| v. | Judge Arthur I. Harris |
| JACQUES PICARD, *et al.*, Defendants. | |

MEMORANDUM OF OPINION

On September 25, 2001, debtor Morris Dorfsman filed a Chapter 7 petition. On July 21, 2005, the trustee filed this adversary proceeding alleging that Dorfsman's bankruptcy estate has a 25% interest in all proceeds from the sale of real property currently titled to defendant Picard Enterprises, Inc. The adversary complaint seeks a declaratory judgment recognizing the estate's equitable interest in the real property, sale of the real property to recover the estate's equitable interest, and other relief. On September 23, 2005, defendants filed a motion to dismiss (Docket #14) for failure to state a claim. As discussed in more detail below, defendants' motion to dismiss is construed as a motion for summary judgment and is denied, without prejudice.

## JURISDICTION

The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 25, 2001, debtor Morris Dorfsman filed a Chapter 7 petition. Dorfsman's schedule B listed a "25% equitable interest in a parcel of land owned by Jack Picard." Initially, the trustee filed a no asset report, discharge was entered, and the case was closed on April 18, 2003. On April 1, 2004, however, the Court granted the unopposed joint motion of the trustee and the debtor to reopen the case, and soon thereafter the trustee filed a notice of assets. On July 21, 2005, the trustee filed an adversary complaint "to determine priority, validity and extent of liens and interests of co-owners of real property pursuant to section 363(h) of the Bankruptcy Code."

The complaint alleges that debtor Michael Dorfsman entered into an agreement in the late 1980s with defendant Jacques Picard and with Picard's wholly owned corporation, Heights Pet World, Inc. Dorfsman allegedly agreed to help finance Picard's purchase of more than 170 acres of land in Saybrook Township, Ashtabula County, Ohio (the Saybrook property). Dorfsman was to

2

pay the monthly mortgage on the Saybrook property, and in exchange he would receive 25% of the proceeds from the property's eventual sale. The Saybrook property was purchased and titled to Heights Pet World, Inc., and Dorfsman allegedly paid the down payment and the monthly mortgage for several years.

The complaint further indicates that Dorfsman and Picard also entered into a written agreement wherein Dorfsman purchased the assets of Picard's corporation, Heights Pet World, Inc. (the asset sale agreement). The Saybrook property, however, was specifically excluded from the asset sale agreement. Currently, the Saybrook property is apparently titled to Picard Enterprises, Inc., another business entity owned by Picard.

The complaint indicates that the Saybrook property is currently being marketed at more than $2,000,000; apparently, the court hearing Picard's divorce proceedings ordered the sale of the property. The trustee asks this Court to find that 25% of the eventual sale price belongs to Dorfsman's bankruptcy estate, and the trustee further asks this Court to sell the Saybrook property in order to recover the estate's interest. Finally, the complaint alleges that some of the timber and/or other resources from the Saybrook property have already been sold and portions of those proceeds also belong to Dorfsman's bankruptcy estate and should be accounted for.

3

Defendants filed their motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7012. Defendants argue that Dorfsman's alleged agreement regarding the Saybrook property is merely an oral agreement and evidence of this oral agreement is barred by the parol evidence rule. The motion also states that the alleged Saybrook property agreement is only a promise to pay money and is not an interest in or lien on the Saybrook property. Thus, defendants argue that the Bankruptcy Code cannot require the sale of the Saybrook property to pay the alleged debt. Finally, the motion argues that Picard would have breached the alleged agreement back in 1990, so the claim is time-barred by Ohio's six-year statute of limitations on breach of contract claims.

In his opposition brief, the trustee indicates that the agreement regarding the Saybrook property was in fact a written agreement and has been admitted by Picard. The trustee includes Picard's sworn testimony from a divorce proceeding dated October 30, 1998. The transcript states,

> Q. Also, let's talk about this Saybrook property on Route 45. When was that property purchased?
> A. About 12 years ago.
> The Court: It's 172 acres I believe you said?
> [Counsel]: 172.
> Q. It was purchased in 1986?
> A. Yeah, I think that's what it was.

4

Q. And who purchased that property in Saybrook?
A. Heights Pet World.
Q. And what was the purchase price of the property?
A. $90,000.
Q. And how did Heights Pet World pay for that property?
A. Put down $10,000 cash and took a purchase money mortgage with the owners.
Q. What happened to that property when you sold Heights Pet World to Morris Dorfsman?
A. It was an excluded asset and went into Picard Enterprises, Inc.
Q. Do you have a verbal agreement with Mr. Dorfsman about that property?
A. Yes. I haven't even thought about this happening. What happened is I saw the piece of property. I thought it would be worth some money down the road. I approached Morris. He was running the business at the time. I said if you think the business could come up with $10,000 down payment and make the payment, I think we ought to buy it. And when it's sold, I give you 25% of the net proceeds. So he agreed and came up with the money and the store made the payments.
The Court: Heights Pet World makes the payment?
A. Yes
The Court: And the agreement with Dorfsman is a verbal?
A. Yes.
The Court: And you're saying you were going to split the proceeds?
A. Give him 25% of the net proceeds. It is written some place. There's writing on it.
Q. Did Heights Pet World and Mr. Dorfsman make those payments on Saybrook?
A. Yes.
Q. Until how long?
A. Till the end of '91.
Q. Was the balloon payment made on the Saybrook property?
A. Yes. After five years it had to go to the bank. So I borrowed the money at Huntington Bank to pay off the balloon.
Q. And is there a balance existing on the loan for the Saybrook property?
A. Yes.
Q. And do you know what that balance is?

5

> A. I think it's around $40,000.
> Q. Since 1991, when Mr. Dorfsman ceased making the payment on the mortgage, how has the mortgage on Saybrook been paid?
> A. I've been paying it out of the rental income.

The trustee argues that Dorfsman's agreement with Picard was a joint venture or, alternatively, a written or oral contract creating an express trust. The trustee further asserts that the parol evidence rule is inapplicable because Picard admitted to a written agreement regarding the Saybrook property, separate and apart from the asset sale agreement. Lastly, the trustee argues that the Ohio six-year statute of limitations only began to run in 2001, when defendant allegedly first breached his agreement with Dorfsman by denying that Dorfsman had any interest in the property.

In their reply brief, defendants argue that the alleged Saybrook property agreement is too indefinite to be enforceable. Defendants also argue that the trustee is estopped from bringing the joint venture claim or timber proceeds claim because debtor did not properly schedule these claims on schedule B. The Court took the matter under advisement and is now ready to rule.

## STANDARD OF 12(b)(6) MOTION AND SUMMARY JUDGMENT MOTION

Defendants brought a motion to dismiss (Docket #14) pursuant to Bankruptcy Rule 7012 and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

6

"If . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b). Plaintiff referenced materials outside the pleadings, specifically the transcript of Picard's testimony during his divorce proceedings. Thus, the Court will treat defendants' motion as a motion for summary judgment under Rule 56.

Consistent with the language of Rule 12(b)(6) and relevant case law from the Sixth Circuit, a court must give notice that it intends to convert a motion to dismiss into a motion for summary judgment whenever a party "is likely to be surprised by the proceedings." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 571-72 (6th Cir. 2001) (quoting *Shelby County Health Care Corp. v. S. Council of Indus. Workers*, 203 F.3d 926, 931 (6th Cir. 2000)); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004). In the present case, after the trustee presented matters outside the pleadings, the defendants were given an opportunity to respond, and their reply brief arguments specifically addressed the transcript of Picard's divorce proceedings. Therefore, defendants should not be surprised by the Court's consideration of evidence outside the pleadings and conversion of their motion to dismiss into a motion for summary judgment. In any event, by denying summary judgment, *without prejudice*, all parties will be given

further opportunity to move for summary judgment and to conduct discovery, thereby eliminating any potential prejudice from the Court's conversion of the defendant's motion to dismiss into a motion for summary judgment.

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997); *see, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff."). In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

DISCUSSION

The Court finds that the trustee has presented issues of genuine fact, and the defendants are not entitled to judgment as a matter of law. The trustee's complaint presents at least three issues: (1) whether Dorfsman and Picard had a written or oral enforceable agreement regarding the Saybrook property, (2) whether the breach of that alleged agreement creates an equitable lien on the Saybrook property, and (3) whether the Court can order the sale of the property. The Court is unable to decide these issues on summary judgment at this time.

First, whether Dorfsman and Picard had an enforceable agreement regarding the Saybrook property is an issue of material fact still in dispute. Picard's sworn testimony at his divorce hearings is sufficient evidence to create a factual dispute regarding the alleged agreement. Defendants have argued a variety of defenses to their potential liability but, as discussed briefly below, none of the defenses can support summary judgment. The parol evidence and statute of frauds arguments are insufficient on summary judgment because the trustee has presented Picard's

9

sworn statements during his divorce proceedings that suggest that Picard and Dorfsman had a written or oral agreement regarding the Saybrook property. *See* Ohio Rev. Code § 1302.04(C)(2) (containing exception to statute of frauds if oral contract is admitted). The statute of frauds argument may also be inapplicable if Picard and Dorfsman had a joint venture to buy and sell property and share in the proceeds. Defendants have also failed to provide sufficient evidence to find as a matter of law that the statute of limitations has run. Additionally, the specifics of the alleged Saybrook agreement are still in dispute such that the Court cannot determine whether the agreement lacked sufficient definiteness. Nor is the trustee estopped from bringing the joint venture claim or timber proceeds claim. Even if the debtor did not properly schedule the joint venture claim or timber proceeds claim, the debtor's actions cannot be used to estop the *trustee* from bringing those claims. *See Parker v. Wendy's Intern., Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004) (finding trustee not estopped from bringing debtor's employment discrimination action because debtor, not trustee, made the inconsistent statements).

Second, if the Court finds that an enforceable agreement existed and was breached, the Court could conclude that Dorfsman's bankruptcy estate has an equitable lien on the future proceeds from the Saybrook property. For example, the breach of a joint venture agreement could result in an equitable lien or a

10

constructive trust on the property's proceeds. *See Ferguson v. Owens*, 9 Ohio St. 3d 223, 226-27, 459 N.E.2d 1293, 1295 (1992) (discussing constructive trusts as appropriate remedy against unjust enrichment); *Katz v. Banning*, 84 Ohio App. 3d 543, 551, 617 N.E.2d 729, 734 (Ohio App. 10 Dist. 1992) ("An equitable lien arises either from (1) a written agreement indicating an intent to make particular property a security for a debt or obligation, or (2) from implication by a court of equity upon consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings.").

Third, the Court is doubtful that it can order the sale of the property under section 363(h) because none of the evidence indicates that the property is owned as "an undivided interest as a tenant in common, joint tenant, or tenant by the entirety." 11 U.S.C. § 363(h). The Court, however, need not decide this issue at this time because (1) the Court has yet to decide whether Dorfsman's estate has any claim to the Saybrook property and (2) the parties have indicated that another court has already ordered the defendants to sell the property.

11

CONCLUSION

Defendants' motion to dismiss is construed as a motion for summary judgment and is denied, without prejudice.

IT IS SO ORDERED.

---
Arthur I. Harris
United States Bankruptcy Judge